## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

            Plaintiff,                  CASE NO: 20-cr-20262

v.                                 Hon. Matthew F. Leitman
                                 United States District Judge

AUSTIN JOSEPH LASH,

            Defendant.

_____/

## United States of America's Response
## to Lash's Motion to Suppress Evidence

On February 19, 2020, Michigan State Police and the Internet Crimes Against Children Taskforce executed a search warrant at Lash's residence and recovered numerous electronic devices. Some of those electronic devices contained child pornography that Lash obtained from the internet. Additionally, a thumb drive and a laptop recovered from Lash's stored a video Lash recorded of himself masturbating to ejaculation onto a sleeping young child. A grand jury indicted Lash on

June 17, 2020 for production, transportation, and possession of child pornography.

Lash challenges the validity of the search warrant on his residence for three reasons. Lash claims that the informaton in the warrant was stale and lacked a nexus to his current residence, that typographical errors rendered the warrant invalid, and that the magistrate was not properly authorized to sign the search warrant. Lash is wrong. Probable cause supported the issuance of the search warrant at Lash's residence, including a proper nexus between his residence and the evidence sought in the warrant. Moreover, Sixth Circuit case law and common sense establish that a typographical error does not invalidate a search warrant. Finally, a neutral and detached magistrate approved the warrant in accordance with Livingston County procedures. Even if this warrant were in any way defective, the officers relied on the warrant in good faith and the *Leon* exception would apply. The Court should deny Lash's motion without a hearing.

## Facts

On July 12, 2019, Detective/Trooper Kenneth Weismiller, a Michigan State Police officer and member of the Internet Crimes Against Children taskforce ("ICAC") in Lansing received a cyber-tip from the National Center for Missing and Exploited Children (NCMEC), that a Facebook account in the name of Austin Lash used Facebook Messenger on April 29, 2019 to send child pornography to another user with the name Austin Lash. (Ex. A, Search Warrant and Affidavit, Filed Under Seal, ¶¶ 3B-3C).

Investigation demonstrated that Lash transported the child pornography while residing at a residence in Fenton, Michigan and later moved to a residence in Clio, Michigan. Detective Weismiller drafted and executed a search warrant for the residence in Clio, Michigan.

The affidavit detailed the investigation and the evidence demonstrating probable cause for a search of Lash's residence. Detective Weismiller explained that he had been employed by the Michigan State Police for six years and worked with the ICAC taskforce for the last five years. (Ex. A, ¶ 3A).

Detective Weismiller received a tip from NCMEC that showed that a Facebook account in the name of Austin Lash sent another user with the same name an image of child pornography, or Child Sexually Abusive Material ("CSAM") as referred to under state law. (Ex. A, ¶¶ 3B - 3D). Detective Weismiller viewed the videos being shared between the two Facebook accounts and  based on his training and experience he determined that they were CSAM and provided excruciating detail of the contents of the video, explaining that they were a mash of different child pornography videos. (Ex. A, ¶¶ 3B, 3E-3F).

Not only were the Facebook accounts transporting child pornography in Lash's name and using Lash's date of birth, Detective Weismiller determined several other links between the child pornography and Lash. (Ex. A, ¶¶ 3D, 3K). For instance, Detective Weismiller discovered through a subpoena that the IP Addresses used to transport the child pornography were assigned to Lash's parent's residence, where Lash lived at the time. (Ex. A, ¶¶ 3D, 3I, 3K, 3O). Detective Weismiller also obtained a search warrant for the contents of the two Facebook accounts registered to Austin Lash.  Included in the return for this warrant were numerous videos depicting at least one

4

child under 16-years-old involved in a sexual situation.  (Ex. A, ¶ 3S).
There were also other indications that Lash was the user of the
Facebook accounts, including other personal identifying information
and photographs of Lash. (Ex. A, ¶¶ 3T, 3W).

There were numerous indications that Lash had moved from his
parent's residence into his own residence. In a public Instagram account
linked to lash, a post from June 24, 2019, included a picture of Lash
with a garage door opener and keys, indicating that he moved in to a
new residence.  (Ex. A, ¶ 3X(b)). Lash also noted in a snapchat
conversation reviewed by officers that he was on his way to Clio, where
the new residence is located. (Ex. A, ¶ 3V(b)). A car registered to Lash's
father was also at the 11432 address only seven days before the
issuance of the search warrant. (Ex. A, ¶ 3R). Detective Weismiller used
the law enforcement information network ("LEIN") and SOS database
to search Austin Lash, which also confirmed that Lash moved from his
parents' home to his own residence located at 11432 N. ****** Road,
Clio, Michigan. (Ex. A, ¶ 3Y). Finally, Detective Weismiller located a

deed showing that Lash filed a warranty deed in his own name for the target address. (Ex A., ¶ 3P).[1]

Trooper Weismiller determined that Lash had moved from his parent's residence to the 11432 N. ****** Road, Clio, Michigan residence based upon all of the factors outlined above.

Trooper Weismiller also detailed the characteristics of child pornography collectors in his experience will very often keep child erotica and CSAM for years. (Ex. A, ¶ 3CC). He also noted that trained officers can view even deleted computer files. (Ex. A, ¶ 3FF). Detective Weismiller also knew that a user can access Facebook using a cellular phone or a computer. (Ex. A, ¶ 3BB).

Based on all of those factors, Weismiller believed that there was probable cause that there were electronic devices containing evidence at either residence. (Ex. A, ¶ 3AA).

Magistrate Sherwood issued the warrant on February 18, 2020, and Detective Weismiller executed the warrant on February 19, 2020 with other members of the Michigan State Police. The officers recovered numerous electronic devices, but Lash was not home. Officers searched

---

[1] This paragraph contains a typographical error for the address of the residence stating 11332 rather than 11432.

Lash's electronic devices and discovered child pornography, including images that appeared to be manufactured rather than downloaded from the internet, including a video that showed Lash masturbating to ejaculation onto a child. Trooper Weismiller interviewed further witnesses and determined the identity of the victim as well as the location where Lash manufactured the video, his parents' residence in Fenton. Officers executed another search warrant at his parents' address, in part to confirm that Lash indeed manufactured the video at that residence.

Officers arrested Lash and the Livingston County Prosecutor's office charged Lash with state child pornography charges. On June 17, 2020, a grand jury indicted Lash for manufacturing, transporting, and possessing child pornography. On July 14, 2020, agents arrested Lash and state prosecutors later dismissed their child pornography charges.

## **Argument**

## I.    **Probable Cause Supported the Issuance of the Search Warrant**

The Fourth Amendment requires warrants to be premised upon probable cause.  U.S. Const. Amend. IV. The Supreme Court has noted

that "Probable cause … is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. United* States, 571 U.S. 320, 134 S.Ct. 1090, 1103 (2014). Probable cause has been defined as "a reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Harris*, 255 F.3d 288, 292 (6th Cir.2001). Moreover, "[S]earch warrant affidavits are to be judged on the totality of the circumstances, not line by line scrutiny." *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir.2010) (citing Illinois v. Gates, supra at 239).  Thus, in reviewing search warrant applications, "[t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* at 239 (citing, *Jones v. United States*, 362 U.S. 257, 271 (1960)).

Once a magistrate has determined the existence of probable cause, that decision should only be reversed if it was arbitrarily made.  United States v. Coffee, 434 F.3d 887, 892 (6th Cir. 2006).  The magistrate's determination that probable cause exists is owed "great deference."

*United States v.* Greene, 250 F.3d 471, 478 (6th Cir. 2006). As the Supreme Court explained, de novo review of a magistrate's determination "is inconsistent both with the desire to encourage use of the warrant process by police officers and with the recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case." *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984). This deferential standard "further[s] the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Id.*

Probable cause supported the issuance of a warrant in this case. The warrant provided a strong link between Lash and criminal activity, as well a common sense link between Lash's new residence and the evidence. Detective Weismiller received information from a named source, NCMEC, which had in turn received the information from Facebook. Lash's concerns regarding reliability may have some weight when discussing confidential informants or anonymous sources, but have no merit in this context. While it may be preferable to state Facebook and NCMEC's reliability, it is a hypertechnical criticism of the affidavit. NCMEC's reliability is well-established and does not need

9

extensive recitation in an affidavit. *United States v. Zorn*, No. 10-20077, 2010 WL 2287144, at *3 (E.D. Mich. May 27, 2010), aff'd, 461 F. App'x 493 (6th Cir. 2012), cert. granted, judgment vacated, 568 U.S. 803, 133 S. Ct. 149, 184 L. Ed. 2d 5 (2012), and vacated and remanded, 487 F. App'x 289 (6th Cir. 2012) (sentence vacated on other grounds); *See also* 42 U.S.C. §§ 5571(8)-(9). Moreover, the "Magistrate has the same right as a Court to take judicial notice." *United States v. Sevier*, 539 F.2d 599, 603 (6th Cir.1976). The magistrate could easily believe that Facebook is a reliable custodian of their own records and able to provide records of their own users, a fact corroborated by the later search warrant results showing Lash indeed was the user of the Facebook accounts. Detective Weismiller also personally reviewed the child pornography video provided by NCMEC. There is ample probable cause that Lash possessed CSAM/ child pornography through the facts set forth in the affidavit, which demonstrated that one account operated by Lash sent child pornography to another account operated by Lash, and that one of those accounts contained additional CSAM/child erotica.

10

### A.    The search warrant affidavit demonstrates a nexus between the evidence sought and Lash's residence, and the information was not stale.

Lash contends that the magistrate should not have authorized the search warrant because the information was stale related to his transportation and possession of child pornography and lacked a nexus to his residence.  Both of these claims are wrong.

### 1.    The evidence related to his transportation of child pornography was not stale.

Sixth Circuit case law recognizes that the staleness calculation in the realm of child pornography is far different than in cases involving other contraband. "[W]e have reasoned that because the crime is generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography." *United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009). In *Paull*, the Court upheld a warrant where the latest evidence of a defendant subscribing to a child pornography website was thirteen months prior to the search warrant. *Id.* Other courts have found likewise.  *See United States v. Shackleford,* 2007 WL 403627, at *6 (E.D. Ky. Feb. 1, 2007)

11

(eight month between information and warrant not stale); *United States v. Costello*, 596 F. Supp. 2d 1060, 1066 (E.D. Mich. 2009) (thirteen months not stale following decision in *Paull*); *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir.1997) (ten month time delay not stale); *United States v. Froman*, 355 F.3d 882, 886 (5th Cir. 2004) (delay from February 2001 to November 2001 not stale).

Here, the NCMEC tip indicated that Lash transported the child pornography on April 24, 2019. Detective Weismiller obtained the warrant on February 18, 2020. However, Detective Weismiller also obtained information from a search warrant on January 29, 2020. (Ex. A, ¶ 3S). That resulted in the discovery of additional apparent CSAM on Lash's Facebook account.[2] (Ex. A, ¶ 3U). The affidavit did not provide any date for those being stored on uploaded to the account. However, since Detective Weismiller preserved the accounts on July 12, 2019, the Facebook accounts contained CSAM, and Lash possessed CSAM, as of at least that date. (Ex. A, ¶ 3N). Here, Lash also did not merely visit a website, he transported a file from one account of his to another with

---

[2] An image of a minor's breasts do not meet the federal definition of child pornography but do constitute CSAM under Michigan state law. The possession of such images remain child erotica and still constitute evidence that Lash possessed child pornography.

graphic child sex penetration, an act which took several affirmative steps. Regardless of whether the court views the most recent information as approximately seven months before the warrant or under ten months before the warrant, the information supporting probable cause is not stale, based upon prior case law and Detective Weismiller's attestation based on his experience that child pornography offenders keep child pornography for long periods of time. Finally, while it is not essential to the issue of probable cause, it appears Detective Weismiller continued to investigate and executed the search warrant very soon after receiving additional information from Facebook.

Controlling case law and common sense demonstrate that this information was not stale.

### 2. Lash's move to a new residence does not defeat probable cause.

Common sense and another case from this district dictate that Lash's move to a new residence does not result in the elimination of probable cause in the context of a child pornography investigation. In *United States v. Costello*, 596 F. Supp. 2d 1060, 1066 (E.D. Mich. 2009), the defendant moved residences between the initial investigation and the issuance of a search warrant during a child pornography

investigation and the Court upheld the warrant on the new residence.

The Sixth Circuit reviewed the issue of staleness in this context in

*United States v. Paull,* 551 F.3d 516, 522-523 (6th Cir. 2009), in which

the defendant was convicted on his conditional guilty plea to possession

of child pornography and attacked a search warrant that was based on

an affidavit alleging that he purchased access to a pornographic website

thirteen months prior to the search. The court rejected the challenge,

reasoning as follows:  "Applying this approach to child pornography, we

have reasoned that because the crime is generally carried out in the

secrecy of the home and over a long period, the same time limitations

that have been applied to more fleeting crimes do not control the

staleness inquiry for child pornography.

The warrant states that an individual can access Facebook on a

mobile device or another electronic device. (Ex. A, ¶ 3AA). The issuing

magistrate and this Court are entitled to take the common sense view

that a person moving from one location to another takes their personal

electronic devices with them, especially those that contain material

valuable to them and material they wish to keep secret. For Lash, child

pornography fits both of those categories. The warrant had a sufficient nexus to Lash's Clio address.

## B.    The typographical error in the search warrant does not invalidate it.

Lash does not dispute that the search warrant itself.  The search warrant states the correct address and accurately describes his residence. However, Lash asserts that because the affidavit contains an incorrect digit in two paragraphs that the search warrant is invalid. (Ex. A, ¶¶ 3P, 3Q). Lash makes this claim despite the accuracy of the detailed description and address of the residence in the affidavit and despite the affidavit stating the correct address in several other places. (Ex. A, ¶¶ 1, 3R, 3Y, 3Z, and concluding paragraph).

The review of a search warrant affidavit is not a game of gotcha. Instead, a reviewing court is to remember that "affidavits for search warrants ... must be tested and interpreted ... in a commonsense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *United States v. Ventresca*, 380 U.S. 102, 108,

15

85 S.Ct. 741, 13 L.Ed.2d 684 (1965). In accordance with that dictate from the Supreme Court, courts have not invalidated warrants based on typographical errors. *United States v. Sawyer,* Fed.Appx. 174, 181, 2005 WL 647774 (C.A.6 (Tenn.); *United States v. Winkler,* 2008 WL 5136463, *3 (E.D. Tenn. 2008); *United States v. Gordon,* 2013 WL 440177, *6 (E.D. Mich. 2013). Lash's seizure upon this typographical error is a greater reflection of a desperate attempt to invalidate extraordinarily damaging evidence rather than any real deficiency in the warrant.

### C.    Lash's contention that the magistrate could not properly issue the warrant is without merit.

An order signed by Chief Judge of the Livingston County Courts, Judge Reader, announced that the district judges selected Magistrate Sherwood, who authorized the warrant in this matter. Lash contends that because Judge Reader, a Circuit Court judge, declared through this order that the magistrate could authorize warrants it did not comply with Michigan law. (Def. Ex. B, Chief Judge Reader Order). The order states that the judges of the 53rd District Court appoint Jerry Sherwood as a magistrate judge. The order also provides that the magistrate has the power to issue search warrants. (Def. Ex. C. at 4).

Lash relies on M.C.L.A. § 8511, which states that a district court magistrate may issue search warrants if authorized to do so by a district court judge, and MCR 4.401, which states that magistrates may only exercise duties expressly authorized by the chief judge or division.

This argument fails for many reasons. First, Livingston County operates under a unified court plan. Administrative order 2013-10 from the Michigan Supreme Court authorizes concurrent jurisdiction for the Livingston County Circuit and District Courts. This means that judges in that county can operate as district court judges and circuit court judges regardless of their status. Also under that plan, there is also one unified chief who operates as the head of both the circuit and district courts. Chief Judge Reader, as the "Chief Judge of Livingston County Courts," was the chief judge of both the circuit and district courts, and had the power to authorize the magistrate to issue search warrants. He also, as a district court judge, could authorize Magistrate Sherwood to issue search warrants. Second, even if Chief Judge Reader is not a district court judge, M.C.L.A § 8511 does not dictate the manner in which a district court judge must authorize magistrates to issue search warrants. This order does not mean that the other district court judges

17

did not authorize Magistrate Sherwood to issue warrants. Finally, the government has obtained and attaches as Exhibit B, the email from the Michigan Supreme Court's regional administrator at the time notifying Livingston County that the administrative order had been approved. The approval by the Michigan Courts of the order is very strong evidence of its legality. Lash's argument ignores common sense and the unified court system that operates in Livingston County.

## II.   Even if the Search Warrant is Any Way Deficient, the Good Faith Exception Applies

Even in the event that this Court finds that the affidavit is not supported by probable cause, the good faith exception applies.

### A.   The good faith exception applies to any deficiency in probable cause or lack of nexus between the criminal activity or place searched.

In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 340 (1984), the United States Supreme Court recognized the good faith exception, allowing officers to rely on search warrants executed in good faith later determined to be lacking. Even if there is not probable cause to issue a warrant, the exclusionary rule will not apply unless one of the four following categories applies: (1) if the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would

18

have known was false except for his reckless disregard for the truth;"
(2) if "the issuing magistrate wholly abandoned his judicial role;" (3) if
the affidavit was "so lacking in indicia of probable cause as to render
official belief in its existence entirely unreasonable," or in other words,
where "the warrant application was supported by [nothing] more than a
'bare bones' affidavit,"; or (4) if the "warrant may be so facially
deficient—i.e., failing to particularize the place to be searched or the
things to be seized." *Leon* at 914-915.

Lash provides a conclusory statement that the good faith
exception does not apply, but provides no explanation for why it does
not. For this Court to uphold the warrant under the good faith
standard, however, the affidavit need only contain "a minimally
sufficient nexus between the illegal activity and the place to be searched
to support an officer's good-faith belief in the warrant's validity, even if
the information provided was not enough to establish probable cause."
*United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) But this is
not a "bare bones" affidavit. This was not simple boilerplate nor a bare
bones affidavit, but rather an affidavit that contained specific
descriptions of the entire investigation. It provided a step-by-step basis

to link Lash to the criminal activity and provided a common sense reason that Lash's residence would contain evidence of his criminal conduct. Even if the Court found the information in the warrant stale, it is within a close enough time frame of other cases that have allowed such warrants that it would meet the good faith standard.

Lash may believe that the allegations connecting the illegal activity to the residence is lacking, but only "some modicum of evidence, however slight" is necessary for the good faith exception to apply when connecting the criminal activity to the place to be searched. *United States v. Warren*, 365 Fed.Appx. 635, 637 (6th Cir. 2010) (quotation omitted). Here, there is far more than a modicum of evidence connecting the criminal activity to the place searched.

## B. The good faith exception would apply if the warrant is void *ab initio*.

Finally, even if Lash's contention that the warrant is void *ab initio* is correct---which it is not---the evidence is still admissible pursuant to *Leon*. In *United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010), the Sixth Circuit invalidated a search warrant because the issuing judge could not authorize a warrant in that county under state law. However, the Court remanded to the district court for a determination of whether

20

the officers acted in good faith, ruling that the good faith exception can apply when officers relied on a wrongly issued warrant in good faith. *See also United States v. Moorehead,* 912 F.3d 963, 969 (6th Cir. 2019), cert. denied, 140 S. Ct. 270, 205 L. Ed. 2d 180 (2019); *United States v. Ammons,* 207 F.Supp.3d 732, 743-744 (W.D. Ky 2016) (Good faith exception applied when magistrate could not lawfully authorize warrant.) Lash does not allege and there is no evidence that the officers involved---or anyone in Livingston County for that matter---was aware that Magistrate Sherwood could not issue search warrants. Suppression of the warrant for that reason in this circumstance would further none of the goals of the Fourth Amendment.

## III.   Conclusion

Lash's motion should be denied without a hearing.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

Dated: September 21, 2020       s/CHRISTOPHER W. RAWSTHORNE
Assistant United States Attorney
600 Church Street
210 Federal Building
Flint, Michigan 48502-1280
Phone: (810) 766-5035
christopher.rawsthorne@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2020, the foregoing document was electronically filed by an employee of the United States Attorney's Office with the Clerk of the Court using the ECF system which will send notification of such filing to:

Barney Whitesman

<u>s/JESSICA SZUKHENT</u>
United States Attorney's Office
600 Church Street
Flint, Michigan 48502-1280